[No. C015594. Third Dist. Feb. 8, 1994.]

SANDRA WILLIS, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Neil R. McAllister, Jr., for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Walter E. Wunderlich, Assistant Attorney General, Richard M. Thalhammer and Kenneth R. Hulse, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

RAYE, J.—"Any person now or hereafter employed by the State may file . . . a designation of a person who, notwithstanding any other provision of law, shall, on the death of the employee, be entitled to receive all warrants that would have been payable to the decedent had he survived." (Gov. Code, § 12479.) The issue presented in this appeal is whether the State Department of Forestry and Fire Protection (State), contrary to the terms of Government Code section 12479, must withhold the payment of warrants to a deceased employee's designee once it receives notice of an alleged community property interest in the proceeds. We conclude the Legislature clearly expressed its directive to the State to release outstanding warrants to an employee's designee and this specific directive prevails over Civil Code provisions defining community property and prohibiting one spouse from making a gift of community property. (Civ. Code, § 5105, enacted 1969, repealed Stats. 1992 ch. 162, § 3, operative Jan. 1, 1994; § 5250, enacted 1985, repealed Stats. 1992 ch. 162, § 3, operative Jan. 1, 1994.) We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 1981 Stenalt Willis, an employee of the State of California Department of Forestry and Fire Protection, signed a form designating his then 14-year-old daughter, Kelly, to receive all state warrants due to him at the time of his death. Following his April 1982 divorce, Willis married plaintiff Sandra Willis in September 1982. Willis never revoked his 1981 designation.

Willis was hospitalized in May 1990, and he died on June 16, 1990. Apparently before his death he requested an emergency disability retirement which, according to the paperwork generated later by the State, became effective June 14, 1992. The disability retirement was later upgraded to an industrial disability retirement. Plaintiff asserts she verbally notified the State several times between June 16 and July 2, 1990, that she was entitled to receipt of any funds held for her late husband. On July 2, 1990, she filed her first written claim with the State.

On July 11, 1990, the State wrote to Kelly informing her she was the person designated to receive her father's final payroll warrants and requesting her to submit a completed form. She complied. On July 18 the State issued Kelly the first warrant. On July 19 the State received plaintiff's second written claim to the warrants. The State did not inform Kelly of the competing claim by plaintiff but continued to deliver the final warrants to her.

By October 1, 1990, plaintiff realized Kelly had received the payroll warrants. In July 1991 plaintiff brought the underlying action against the

State for recovery of the community property funds she contends were wrongfully paid to Kelly. Plaintiff opposed the State's request for an order compelling the joinder of Kelly. The motion was granted, but Kelly successfully moved for summary judgment in the State's cross-action against her. The State has appealed the propriety of the summary judgment in a separate appeal.

The trial court granted the State's motion for summary judgment in the main action. The court found there were no material triable issues of fact and the State was compelled by Government Code section 12479 to deliver the payroll warrants to the designee. We agree and affirm the judgment.

## I

We first address two preliminary issues. ■ Plaintiff argues the trial court erroneously refused to take judicial notice of sections 8477.21 and 8477.25 of the State Administrative Manual wherein agencies are directed to make payment to the designee provided there are no competing claims to the delivery of the warrants. Plaintiff failed to present a certified copy of duly promulgated regulations to the trial court (Gov. Code, § 11343.6) and the Attorney General points out the manual has not been adopted as a regulation pursuant to the Administrative Procedure Act. Consequently, judicial notice is not mandatory. (Evid. Code, § 451.) Additionally, plaintiff did not furnish "the court with sufficient information to enable it to take judicial notice of the matter." (Evid. Code, § 453.) Plaintiff simply requested the court to take judicial notice without appending any information whatsoever. In any event ". . . the decision of the judge not to take judicial notice will be upheld on appeal unless the reviewing court determines that the party furnished information to the judge that was so persuasive that no reasonable judge would have refused to take judicial notice of the matter. (Cal. Law Revision Com., West's Ann. Evid. Code, § 453, pp. 413-415.) Since the manual is without legal effect, the trial court did not err by denying the request for judicial notice.

■ Secondly, plaintiff contends that under the terms of Government Code section 12479 she was entitled to receive payment of the warrants because Stenalt was "permanently separated" from state employment on June 14, 1990, two days before his death, when he was granted a disability retirement. She dilutes her argument by insisting the retirement was permanent because her husband was not released from the hospital and died before resuming employment with the state. A disability retirement is not, by definition, permanent. (Cal. Code Regs., tit. 2, § 446.) Obviously, death renders separation permanent, but the issue is whether the disability retirement, on the date it became effective, permanently severed the employment

relationship so as to revoke the designation as a matter of law. On June 14 Stenalt retained the right to return to work, a right he retained until his death. As a result, the disability retirement did not automatically revoke the designation and the fact the bureaucratic forms confirming the retirement were dated posthumously is irrelevant.

## II

Plaintiff's quarrel is with the terms of Government Code section 12479. The section expressly directs the State to deliver a deceased employee's warrants to a designee "notwithstanding any other provision of law." Plaintiff emphasizes there has been a dramatic change in the laws involving the disposition of community property since 1961 when Government Code section 12479 was enacted. Since a spouse is prohibited from making a gift of community property without the other spouse's consent (Civ. Code, § 5250, enacted 1985, repealed Stats. 1992 ch. 162, § 3, operative Jan. 1, 1994) and is entitled to all community property if the deceased spouse dies intestate (Prob. Code, §§ 100, 6401), plaintiff objects to according Government Code section 12479 a "super status" over all other laws. She concludes that to affirm the judgment we must find there was a legislative intent to amend by implication the conflicting sections of both Civil and Probate Codes. We translate this argument to mean that plaintiff asserts the later enacted and specific provisions governing the disposition of community property impliedly repealed the broad language of Government Code section 12479.

We are bound by familiar rules of statutory construction. When the language of a statute is clear and unambiguous, we must apply the plain language without resort to extrinsic aids to interpretation or artificial rules of construction. (*Department of Personnel Administration* v. *Superior Court* (1992) 5 Cal.App.4th 155, 173-174 [6 Cal.Rptr.2d 714].) Moreover, statutes operate prospectively, although postenactment circumstances and laws change. (2B Sutherland, Statutory Construction (5th ed.) § 49.02, pp. 2-3.) Finally, although statutes may appear to be in conflict there is a presumption the later enacted statute did not impliedly repeal the former. (*Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 54 [69 Cal.Rptr. 480].) "[A] repeal by implication will be found (1) where the two acts are so inconsistent that there is no possibility of concurrent operation, or (2) where the later provision gives undebatable evidence of an intent to supersede the earlier." (*Sanford* v. *Garamendi* (1991) 233 Cal.App.3d 1109, 1121-1122 [284 Cal.Rptr. 897].)

The language of Government Code section 12479 is unmistakably plain. A state employee is entitled to designate a recipient of his or her final warrants.

The language is comprehensive; the designation is not to be encumbered by any other laws regarding the disposition and probate of the decedent's property. Hence, there can be no repeal of Government Code section 12479 by implication unless a later enacted statute gives unmistakable evidence of an intent to repeal this plain language.

Plaintiff decries the disposal of her community property, insisting there is an inherent conflict between Government Code section 12479 and community property laws. We disagree. Government Code section 12479 does not affect or change the character of the property. The designation form simply provides an employee an opportunity to name an individual to receive a deceased employee's final warrants. Perhaps the Legislature intended to give state employees the ability to provide readily available cash at or near the time of death without placing the State in an adjudicative role of deciding between adverse claimants. In any event, since we conclude delivery of the warrants does not transmute the character of the property, application of Government Code section 12479 does not conflict with the Civil Code and Probate Code sections cited by plaintiff. She retains any community property interest to which she is entitled under either the Civil Code or Probate Code.

Plaintiff suggests the State should intercede on behalf of a surviving spouse by withholding the disbursement of warrants once it receives notification of an alleged community property interest. Her complaints are lodged in the wrong forum; it remains a legislative, and not a judicial, prerogative to assess the competing interests and to determine public policy. ■ We must follow the language used by the Legislature "whatever may be thought of the wisdom, expediency, or policy of the act" (*Sanford* v. *Garamendi, supra,* 233 Cal.App.3d at p. 1124) and we emphasize "[o]ur preference for literalism is compelled by the constitutional doctrine of separation of powers." (*Id.* at p. 1125.) " 'It is an elementary proposition that courts only determine by construction the scope and intent of the law when the law itself is ambiguous or doubtful. . . . To allow a court . . . to say that the law must mean something different from . . . its language, because the court may think that its penalties are unwise or harsh would make the judicial superior to the legislative branch of the government, and practically invest it with lawmaking power. The remedy . . . is not in interpretation but in amendment or repeal.' [Citation.]" (*Id.* at p. 1125.)

■ Plaintiff points to the abolition of the terminable interest rule as support for her position. While we recognize the community property interests of surviving spouses, the terminable interest rule has no application to the issues raised in this appeal. Nor does our 1983 case, *Chirmside* v. *Board of Administration* (1983) 143 Cal.App.3d 205 [191 Cal.Rptr. 605], dictate a

different result. In *Chirmside* we declined to expand the then existing terminable interest rule to pension plan contributions that only represent withheld earnings during marriage. We wrote: "To allow William's designation of his sister as beneficiary to defeat appellant's interest in the accumulated contributions would be tantamount to a holding that Government Code sections 21332 and 21367.6 (providing for a designated beneficiary for the unpaid accumulated contributions) work an implied repeal of the antigift provisions. This we are unwilling to do. 'Repeals by implication are not favored, and are recognized only when there is no rational basis for harmonizing two potentially conflicting laws. [Citation.] Furthermore, we must assume that when passing a statute the Legislature is aware of existing related laws and intends to maintain a consistent body of rules.' [Citation.] We find no legislative intent, express or implied, in the statutes governing the Public Employees' Retirement System (Gov. Code, § 20000 et seq.) to repeal the antigift provisions concerning the community property interest of a deceased employee's accumulated contributions to his PERS account. Instead we conclude the nonemployee's community property interest in the accumulated contributions can be harmonized with the employee's power to designate a beneficiary by limiting the employee's power to his community property interest in the remaining contributions." (*Id.* at p. 212, fn. omitted.)

Consequently, it is incongruous to rely upon *Chirmside* for the proposition that sections 5105 and 5250 of the Civil Code and sections 100 and 6401 of the Probate Code repealed Government Code section 12479 by implication when we harmonized the statutes at issue to avoid such a disfavored result. To the extent *Chirmside* is relevant at all, it supports our statutory analysis. The State is compelled to deliver the warrants as specified in Government Code section 12479 but the designee does not become a beneficiary; the relevant sections of the Civil Code and Probate Code govern the character and disposition of the property.

### III

As a last gasp on appeal, plaintiff alleges that section 12479 is unconstitutional because it discriminates against an identifiable group solely based on marital status and thereby constitutes a denial of equal protection. We hesitate to decipher plaintiff's raw accusation, lacking as it does citation to legal authority or to the record. ■ We accept the Attorney General's generic response that it is incumbent upon plaintiff to demonstrate more than differential treatment. The Legislature controls the disposition of property (*Kizer* v. *Hanna* (1989) 48 Cal.3d 1, 10 [255 Cal.Rptr. 412, 767 P.2d 679]), and may treat one class of persons differently from another provided there is a rational connection to a legitimate state objective. (*Hale* v. *Morgan* (1978)

22 Cal.3d 388, 395 [149 Cal.Rptr. 375, 584 P.2d 512]; *Peters* v. *Superior Court* (1989) 212 Cal.App.3d 218, 226 [260 Cal.Rptr. 426]; *Baker* v. *City of Santa Monica* (1986) 181 Cal.App.3d 972, 983 [226 Cal.Rptr. 755].) Plaintiff has failed to demonstrate a plausible deprivation of equal protection as assured under both the state and federal Constitutions. The judgment is affirmed.

Blease, Acting P. J., and Nicholson, J., concurred.