Filed 1/30/15  Smith v. Elliot CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| **STEVE SMITH et al.,**<br><br>　　　**Plaintiffs and Appellants,**<br><br>**v.**<br><br>**JAMES MARSHALL ELLIOT et al.,**<br><br>　　　**Defendants and Respondents.** | **A139488**<br><br>**(San Mateo County<br>Super. Ct. No. CIV 520542)** |

Steve and Anna Smith filed a tort action against James Marshall Elliot and Café Real Estate,[1] alleging they had been injured by false complaints Elliot made to various government agencies about the Smiths and their business, Smith Trucks and Equipment (Smith Trucks).  Defendants filed a special motion to strike under Code of Civil Procedure section 425.16, contending the Smiths' complaint arose out of Elliot's acts in furtherance of his right of petition or free speech.

The Smiths opposed the motion based upon a single argument.  They claimed an earlier judgment against Elliot collaterally estopped him from arguing his complaints were privileged.  The Smiths failed to provide the trial court with copies of the record in the prior proceeding, however, and the court denied the Smiths' request for judicial notice of that record.  It then granted defendants' special motion to strike, finding (1)

---

[1] We will refer to Steve and Anna Smith as "the Smiths" save when they must be treated individually.  Similarly, we will refer to the named defendants in the Smiths' action, Elliot and Café Real Estate "dba DELMAR PROPERTIES," as "defendants" unless the context requires they be identified individually.

1

defendants had shown the Smiths' claims arose from conduct in furtherance of the right to petition or free speech and (2) the Smiths had failed to establish a probability of prevailing on the merits of their claims. The Smiths appeal from that order.

We conclude the trial court correctly determined defendants met their burden of showing the Smiths' claims arose from protected activity, because the Smiths did not establish that collateral estoppel should apply. In addition, as the preclusive effect of the former judgment was the sole basis upon which the Smiths grounded their showing of probable success on the merits, their failure to demonstrate the existence of the elements of collateral estoppel is fatal to their claims. Accordingly, we will affirm the order from which the appeal is taken.

FACTUAL AND PROCEDURAL BACKGROUND

The action out of which this appeal arises began in March 2013, when the Smiths filed a complaint against Elliot, Café Real Estate (doing business as Delmar Properties), and numerous Doe defendants. The basis for the current action was Elliot's alleged misconduct in connection with an earlier lawsuit the Smiths had filed against Delmar Properties. The parties to this appeal have been involved in at least four different actions in San Mateo County Superior Court. Since the procedural history of these actions bears on the issues before us, we set it forth below.

*The Smith v. Delmar Action*

Elliot and his wife, Carole Delmar, are real estate brokers and co-owners of Delmar Properties. The complaint in the current action alleges that Smith Trucks used Delmar Properties' real estate brokerage services in acquiring lots on which Smith Trucks stored commercial vehicles. The Smiths asserted that in 2007, they had been involved in a proposed trade transaction for the acquisition of real property contiguous to their warehouse in Princeton-by-the-Sea, California. Claiming they had been damaged by Delmar Properties' tortious mishandling of the transaction, the Smiths sued Delmar

2

Properties, Carole Delmar, and Elliot in an action entitled *Smith v. Delmar, et al.* (Super. Ct. San Mateo County, 2009, No. 490011)) (*Smith v. Delmar*).[2]

*The Restraining Order Action*

According to the complaint in the current action, at some time in early 2010, after Elliot was served with process in *Smith v. Delmar,* he began to make a series of false, malicious, and unsupported complaints about the Smiths' business to various government agencies. Because of these actions, in March 2012, Anna Smith filed an action requesting a civil harassment restraining order against Elliot.[3] She alleged Elliot was driving by the Smiths' place of business on a continual basis, filming and photographing the Smiths, and then contacting numerous state and county agencies. Elliot was allegedly making false reports to the agencies, none of which found any wrongdoing on the part of the Smiths. Anna Smith was the only plaintiff in the restraining order action, but she also requested protection for her husband. Elliot was the only defendant.

On April 5, 2012, Judge Gerald J. Buchwald held a hearing on Anna Smith's request for a restraining order. The next day, Judge Buchwald entered a civil harassment restraining order (Judicial Council Form No. CH-130) prohibiting Elliot from contacting or harassing the Smiths and from interfering with their business (the Restraining Order). The Restraining Order also prohibited Elliot from making complaints about the Smiths or Smith Trucks to any government agency, except in case of a "dire and imminent

---

[2] The record in this appeal does not contain any of the pleadings or other documents from the *Smith v. Delmar* action. We base our description of it largely on the Smiths' complaint in the current action. In their opening brief, the Smiths represent that the *Smith v. Delmar* action was scheduled for trial in September 2014.

In the court below, defendants stated that the Smiths had filed a second, unsuccessful harassment case against Carole Delmar. According to defendants, that action, entitled *Anna Maria Smith, Steve Smith v. Carole Delmar* (Super. Ct. San Mateo County, 2012, No. CIV 515837), involved claims by the Smiths that Carole Delmar had stalked them. Defendants represented that the matter had been dismissed on December 7, 2012, after a full hearing. The record in this appeal contains no documents relating to this last action.

[3] The action was entitled *Anna Maria Smith v. James Marshall Elliot* (Super. Ct., San Mateo County, 2012, No. 512532).

3

[e]mergency." In a handwritten finding, the court noted Elliot had made approximately 10 unfounded complaints to public agencies for the purpose of intimidating the Smiths in the *Smith v. Delmar* lawsuit. In a footnote, the court ruled the reports were not privileged under Civil Code section 47, subdivision (b) because there was "clear and convincing evidence that they were made to intimidate the Smiths as parties in other pending litigation."

No party appealed from the grant of the Restraining Order, and the judgment in that case is now final.

*The Current Action*

The Smiths filed the current action in March 2013. The action was assigned San Mateo County Superior Court No. CIV 520542. The Smiths complaint alleged that the judgment in the restraining order action constituted a final order determining that Elliot's conduct in connection with the *Smith v. Delmar* action was unlawful. The complaint also asserted that Elliot's actions, including the complaints he made to government agencies, were made in his capacity as an officer and agent of Café Real Estate and as a representative of Delmar Properties. Elliot's allegedly false and unwarranted complaints formed the factual basis for claims of trade libel, slander of title, defamation, intentional infliction of emotional distress, and fraud. Relying on Judge Buchwald's findings in the restraining order case, the Smiths alleged Elliot's actions were unprivileged.

*The Motion to Strike*

Elliot and Café Real Estate responded to the Smiths' complaint by filing a special motion to strike under Code of Civil Procedure section 425.16 (section 425.16). Defendants argued Elliot's communications with the government agencies were acts "in furtherance of [the] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue[.]" (Code Civ. Proc., § 425.16, subd. (b)(1).) Defendants noted that all five causes of action in the complaint rested on Elliot's allegedly false reports to government agencies, and they contended

4

those reports were conduct described in subdivision (e) of section 425.16.[4]  The defendants also argued Elliot's reports were absolutely privileged under Civil Code section 47, subdivision (b)(3), which provides that "[a] privileged publication . . . is one made:  [¶] in any other official proceeding authorized by law[.]"  In addition, defendants contended the Smiths could not establish a probability they would prevail on their various causes of action.  (See § 425.16, subd. (b)(1) [causes of action arising from protected acts subject to special motion to strike "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim"].)  Defendants argued that each count of the Smiths' complaint failed to satisfy one or more of the elements of the tort causes of action alleged.

The motion to strike also pointed out that the Smiths had not attached copies of Elliot's communications to the agencies and instead relied exclusively on Judge Buchwald's findings in the restraining order case.  Defendants noted that they reserved argument on the application of the doctrine of issue preclusion[5] because it was the Smith's burden to demonstrate it operated to bar defendants from contesting the Smiths' factual and legal claims.

The Smiths opposed the motion to strike, but their memorandum in support of their opposition contained only half a page of argument addressing their probability of prevailing on the merits of their claims.  (See § 425.16, subd. (b)(1).)  This argument was

---

[4] Under section 425.16, subdivision (e), an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, . . . or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

[5] In modern legal parlance, the term " 'issue preclusion' " refers to one aspect of the concept of res judicata.  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. 3.)  Issue preclusion is often referred to in the case law as "collateral estoppel."  (*Ibid*.)  We use the term collateral estoppel in this opinion, although the terms may be used interchangeably.

5

based entirely on the claimed collateral estoppel effect of the Restraining Order. Their memorandum requested judicial notice of the records in the restraining order action and in *Smith v. Delmar*. Counsel for the Smiths filed a declaration in support of the request for judicial notice and in opposition to the motion to strike. Counsel's declaration sought judicial notice of the *Smith v. Delmar* action and of specified documents from the restraining order action.[6] None of the documents identified in counsel's declaration were attached.

In their reply to the Smiths' opposition, defendants argued collateral estoppel did not apply, and they specifically noted the Smiths' request for judicial notice did not comply with California Rules of Court, rule 3.1306(c). That rule provides: "A party requesting judicial notice of material under Evidence Code sections 452 or 453 must provide the court and each party with a copy of the material. If the material is part of a file in the court in which the matter is being heard, the party must: [¶] (1) Specify in writing the part of the court file sought to be judicially noticed; and [¶] (2) Make arrangements with the clerk to have the file in the courtroom at the time of the hearing." Defendants correctly observed that "[n]o records or transcript pages [were] submitted with the Opposition[.]" With their reply, defendants submitted their own request for judicial notice for documents from the restraining order case, including Judge Buchwald's Restraining Order, the transcript of the hearing, Elliot's response to Anna Smith's request for a restraining order, and the transcript of a June 7, 2012 hearing before Judge Buchwald.[7]

At some point prior to the hearing on defendants' motion to strike, Judge Joseph C. Scott issued a tentative ruling granting the motion, but that ruling is not part of the

---

[6] The documents for which judicial notice was sought included briefs the parties had filed in the restraining order action, the Restraining Order itself, briefing filed in connection with the Smiths' subsequent motion for attorneys fees and costs, the July 12, 2012 order granting that motion (the Attorney Fee Order), and "[a]ny transcripts of any of the proceedings therein."

[7] The record contains no transcript of the June 7, 2012 hearing.

record on appeal.[8] On June 27, 2013, counsel appeared before Judge Scott for a hearing on the motion. On the subject of judicial notice, the Smiths' counsel informed the court that the file in the restraining order action was "downstairs ready to be picked up if the Court wants to review that file." Counsel appears to have contended this satisfied the requirement that the file be in the courtroom at the time of the hearing. (Cal. Rules of Court, rule 3.1306(c)(2).)

After hearing argument from the parties, Judge Scott announced he would adopt his tentative ruling. On July 9, 2013, the trial court filed a written order granting defendants' motion to strike and their request for judicial notice. The court denied the Smiths' request for judicial notice because they had failed to comply with California Rules of Court, rule 3.1306. It found defendants had met their burden of showing that all of the Smiths' claims were based on protected activity stemming from complaints made to agencies seeking to initiate investigations of wrongdoing. It then ruled the Smiths had not met their burden of establishing a probability of prevailing on any of their claims. It did not expressly rule on the preclusive effect of the Restraining Order. Judgment was entered in favor of defendants on August 7, 2013.

*The Appeal and Request for Judicial Notice*

One week later, the Smiths filed their notice of appeal. The notice states the appeal is taken from the judgment in San Mateo County Superior Court No. CIV 520542. The same is true of the Smiths' amended notice of appeal, which was filed on August 18, 2013. Nevertheless, when the Smiths filed their notice of designation of record, they designated documents from the record in the restraining order action as well as from San Mateo County Superior Court No. CIV 520542. The clerk of the superior court included three documents from the restraining order action in the clerk's transcript for this appeal. They are a minute order dated April 5, 2012 (the Minute Order), the Restraining Order, and the Attorney Fee Order.

---

[8] The matter was reassigned to Judge Scott after defendants' peremptory challenge to Judge Buchwald was granted.

7

The Smiths filed their opening brief, and defendants filed a respondents' brief. The respondents' brief contends the Smiths have forfeited any argument that Judge Scott's denial of the Smiths' request for judicial notice was error, because the Smiths offer no argument on that point in their opening brief. In addition, defendants object to the inclusion of documents from the restraining order case in the record in this appeal.

After defendants filed their responsive brief, the Smiths filed a motion seeking judicial notice of the Minute Order and the Attorney Fee Order. The Smiths sought judicial notice of the latter order in the trial court. They did not request judicial notice of the Minute Order in the court below.

DISCUSSION

Before proceeding to the merits of this appeal, we must deal with two important preliminary matters. First, we must determine what materials are properly part of the record in this case. Second, we must clarify what issues are actually before us. Resolution of these matters is essential to understanding the scope of this appeal.

I.      *The Contents of the Record*

Turning first to the record, we noted earlier that the Smiths had designated for inclusion in the record in this appeal materials that were not part of the record in the action below, but rather were from the separate restraining order case. For reasons not apparent to us, the superior court clerk included these documents in the clerk's transcript for this appeal. "As a general rule, documents not before the trial court cannot be included as part of the record on appeal and thus must be disregarded as beyond the scope of appellate review." (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 [materials not part of trial court record cannot be included in appellant's appendix].) We therefore must disregard both the improperly included documents and statements in the briefs that rely on them. (*Ibid.*) Thus, we will not consider either the Minute Order or the Attorney Fee Order, as neither of those documents was before Judge Scott when he ruled on defendants' motion to strike.

Judge Buchwald's Restraining Order is properly part of the record on appeal, however. Defendants sought judicial notice of this order in the court below, and Judge Scott granted their request. We may therefore consider that document.

Perhaps hoping to remedy the deficiencies in the record identified by defendants, the Smiths have asked us to take judicial notice of the Minute Order and the Attorney Fee Order. Again, these documents are not from the record in the case below but are part of the record in the restraining order action. We decline to take judicial notice of the records from that action, as "[j]udicial notice of the record there would 'improperly augment' the record here." (*People v. Waidla* (2000) 22 Cal.4th 690, 703, fn. 1.) Requests for judicial notice should not be used to circumvent ordinary rules of appellate procedure (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1064), and we will not allow the Smiths to use the device of judicial notice to evade the rules governing the record on appeal. Ordinarily, " '[r]eviewing courts . . . do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.) Here, there are no exceptional circumstances warranting a departure from this rule. (*Ibid.*)

If we were to grant the Smiths' request for judicial notice, we would effectively be reviewing the correctness of the trial court's judgment based on matters that were not part of the record before it. (See *Haworth v. Superior Court, supra,* 50 Cal.4th at p. 379, fn. 2.) Thus, the Smiths' "effort to submit new evidence for our review in the first instance is improper." (*Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1194.) It is also untimely, as it was not made until after defendants filed their responsive brief. (See *Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 744 [denying request for judicial notice in reply brief].) For all of these reasons, we deny the request for judicial notice. (See *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 324-325 [declining to take judicial notice of record of related arbitration proceeding for purposes of establishing res judicata, where party did not request that trial court take judicial notice of matter].)

II.     *The Issues on Appeal*

The Smiths include a statement of issues in their opening brief. Entirely absent from the stated issues is any argument concerning Judge Scott's denial of their request for judicial notice. The Smiths had "the opportunity to frame the issues in this appeal at the time [they] filed [their] opening brief" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766), and we may take the issues presented in that brief as a reliable indication of their claims of error. (See *Franklin v. Appel* (1992) 8 Cal.App.4th 875, 893, fn. 11.) Where an appealing party limits its argument to particular issues, we may deem all other issues forfeited. (*Le Bourgeois v. Fireplace Manufacturers, Inc.* (1998) 68 Cal.App.4th 1049, 1053-1054 & fn. 4.) "Courts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge." (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 (*Paulus*).) Because the Smiths did not address judicial notice in their opening brief, "they have waived the right to assert this issue on appeal." (*Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn.* (2008) 166 Cal.App.4th 103, 129.)

In their request for judicial notice in this court, the Smiths attempt to argue that Judge Scott erred in denying their request for judicial notice below. We will not permit the Smiths to make arguments in a request for judicial notice that they failed to make in their opening brief. Nor will we entertain the arguments on the issue of judicial notice contained in their reply brief. As we have explained, "[b]asic notions of fairness dictate that we decline to entertain arguments that a party has chosen to withhold until the filing of its reply brief, because this deprives the respondent of the opportunity to address them on appeal."[9] (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 693.)

---

[9] Our conclusion that the Smiths have forfeited the issue of judicial notice does not imply that their arguments on that score would have merit if we were to reach them. (See *Paulus, supra,* 139 Cal.App.4th at p. 685, fn. 24.) " '[T]he decision of the judge not to take judicial notice will be upheld on appeal unless the reviewing court determines that the party furnished information to the judge that was so persuasive that no reasonable judge would have refused to take judicial notice of the matter.' " (*Willis v. State of California* (1994) 22 Cal.App.4th 287, 291.) The Smiths failed to do so. In the court

10

We therefore proceed to consider only the issues properly tendered in the Smiths' opening brief, and we do so on the basis of the record that was before the trial court when it granted defendants' motion to strike. According to the Smiths, the "ultimate issue" in this case is whether Judge Buchwald's findings in the restraining order action have preclusive effect in this case. Put another way, the question is whether the Restraining Order precluded the trial court from finding the Smiths' claims arose from activity in furtherance of defendants' right of petition or free speech. After setting forth our standard of review, we will turn to that question.

III.     *Special Motions to Strike and Standard of Review*

In ruling on a special motion to strike under section 425.16, courts employ a two-pronged analysis. Under the first prong, "the party moving to strike a cause of action has the initial burden to show that the cause of action arises from an act in furtherance of the moving party's right of petition or free speech." (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1283.) If the moving party satisfies the first prong, then under the second prong, "the burden shifts to the opposing party to demonstrate the probability that it will prevail on the claim." (*Ibid.*)

"An order granting an anti-SLAPP motion to strike is a proper subject for appeal. [Citations.] We review de novo a trial court's ruling on a motion to strike under section 425.16 by 'conducting an independent review of the entire record. [Citations.]' [Citations.] [¶] Thus, our review is conducted in the same manner as the trial court in considering an anti-SLAPP motion. In determining whether the defendant[s] . . . ha[ve] met [their] initial burden of establishing that the [Smiths'] action arises from protected activity, we consider 'the pleadings, and supporting and opposing affidavits stating the

---

below, the Smiths did not provide either the court or defendants with copies of the materials that were the subject of their request. (Cf. Cal. Rules of Court, rule 3.1306(c) ["A party requesting judicial notice of material under Evidence Code sections 452 or 453 *must provide the court and each party* with a copy of the material."], italics added.) And they could not satisfy their obligations under the rule merely by giving the trial court the file number of the restraining order action. (*Conservatorship of Bones* (1987) 189 Cal.App.3d 1010, 1014, fn. 2.)

facts upon which the liability or defense is based.' [Citations.] The second prong—i.e., whether [the Smiths] ha[ve] shown a probability of prevailing on the merits—is considered under a standard similar to that employed in determining nonsuit, directed verdict or summary judgment motions." (*Paulus, supra,* 139 Cal.App.4th at p. 672.)

The issues in an anti-SLAPP motion are framed by the pleadings. (*Paulus, supra,* 139 Cal.App.4th at p. 672.) The plaintiffs may not rely solely on their complaint, even if it is verified. (*Id.* at pp. 672-673.) Instead, their proof must be based on competent, admissible evidence. (*Ibid.*)

IV. *The Trial Court Properly Ruled Defendants Had Met Their Burden of Showing the Smiths' Claims Arose From Protected Activity.*

The trial court concluded defendants had met their burden under the first prong of the section 425.16 analysis by showing that all of the Smiths' claims arose from "protected activity." (See, e.g., *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1009 [reports to government agency seeking initiation of investigation fall with § 425.16, subd. (e)].) It then determined the Smiths could not satisfy the second prong of the analysis, because they had not established a probability of prevailing on their claims.

In opposing defendants' argument that the claims in the current action arose from protected activity, the Smiths relied exclusively on the collateral estoppel effect of the Restraining Order. The trial court made no express ruling on the preclusive effect of that order.[10] Application of collateral estoppel is generally a question of law that we review de novo, however, and we may decide the matter on the record before us. (See *Conservatorship of Buchenau* (2011) 196 Cal.App.4th 1031, 1040 (*Buchenau*).) Because we conclude the Smiths failed to establish all the elements of collateral estoppel, we hold the trial court correctly concluded defendants had satisfied the first prong of the section 425.16 analysis.

---

[10] We shall assume, without deciding, that a restraining order entered pursuant to Code of Civil Procedure section 527.6 is a judgment entitled to collateral estoppel effect. (See *Salisbury v. Hickman* (E.D. Cal. 2013) 974 F.Supp.2d 1282, 1288-1290 [according collateral estoppel effect to restraining order].)

A.      *Elements of Collateral Estoppel and Burden of Proof*

" 'Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.' [Citation.]  The doctrine applies 'only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  [Citations.]  The party asserting collateral estoppel bears the burden of establishing these requirements.' " (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943, quoting *Lucido v. Superior Court*, *supra*, 51 Cal.3d at p. 341.)

Where a party seeks to use collateral estoppel offensively, i.e., "to preclude a defendant from relitigating an issue the defendant previously litigated and lost, the courts consider whether the party against whom the earlier decision is asserted had a 'full and fair' opportunity to litigate the issue." (*Roos v. Red* (2005) 130 Cal.App.4th 870, 880.) "[T]he offensive use of collateral estoppel 'is more closely scrutinized than the defensive use of the doctrine.' [Citations.]" (*Smith v. ExxonMobil Oil Corp.* (2007) 153 Cal.App.4th 1407, 1414.)

Because the law does not favor estoppels, the party invoking collateral estoppel must establish these requirements with certainty.  (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1482.)  "To determine whether to preclude relitigation on collateral estoppel grounds, judicial notice may be taken of a prior judgment and other court records." (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 90, fn. omitted.)  A party fails to meet its burden of establishing the elements of collateral estoppel if it does not provide the court with sufficient information about the nature of the prior proceeding, the parties thereto, or the issues previously adjudicated.  (*Buchenau, supra,* 196 Cal.App.4th at pp. 1040-1041 [party failed to show identity of issues or of parties because necessary evidence not included in record on

13

appeal].)  If the record is incomplete, and we cannot determine whether one or more of the elements of collateral estoppel is present, we cannot apply it to the case.  (*Santa Clara Valley Transportation Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1311-1312 (*Rea*).)

   B. *The Elements of Collateral Estoppel Are Lacking in this Case.*

   Here, the Smiths have not established at least three elements of collateral estoppel. First, they have failed to show that the parties against whom preclusion is sought in the current action are the same as the parties to the restraining order action.  The latter action was brought by Anna Smith against Elliot.  There were no other parties.  In this case, however, Steve and Anna Smith seek to use that judgment against both Elliot and Café Real Estate, which was not a party to the restraining order case.  (Cf. *Salisbury v. Hickman, supra,* 974 F.Supp.2d at p. 1290, fn. 4 [collateral estoppel sought only against defendant who was party to restraining order action and not against other defendants].)  To apply the judgment against a nonparty to the prior litigation, due process demands that the nonparty and the actual party be in privity.  (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 150.)  To be in privity, the nonparty must have had an identity or community of interest with, and adequate representation by, the actual party in the prior proceeding. (*Ibid.*)  The privity determination requires a close examination of the circumstances of each case.  (*Id.* at pp. 149-150.)

   Here, we have almost no information about the relationship between Elliot and Café Real Estate.  In fact, the complaint contains no allegations about the ownership or corporate status of that company.  We glean from the record that Café Real Estate does business as Delmar Properties, of which Elliot seems to be part owner.  We do not know how many other owners there are or who they may be.  In any event, a corporation and its owners are generally separate legal entities for purposes of collateral estoppel.  (*Gottlieb v. Kest, supra,* 141 Cal.App.4th at p. 150.)  The Smiths make no effort to explain why Café Real Estate should be bound by the judgment against Elliot, and from the meager record before us, we cannot determine whether the company had either the opportunity or

14

the incentive to litigate issues that might commonly affect it and Elliot.[11]  (See *id*. at pp. 151-152.)  In the absence of an adequate record, the Smiths have failed to meet their burden of establishing an identity of parties insofar as Café Real Estate is concerned. (See *Rea, supra,* 140 Cal.App.4th at pp. 1311-1312.)

Second, it is not clear that the issues litigated in the two proceedings are identical. (*Pacific Lumber Co. v. State Water Resources Control Bd., supra,* 37 Cal.4th at p. 943 [collateral estoppel requires identity of issues].)  Both the restraining order action and the current action involve Elliot's complaints to government agencies, but the Smiths have not established that the complaints at issue are the same.  Judge Buchwald found Elliot had made "approximately 10 unfounded complaints to public agencies for the purpose of intimidating the Smiths[,]" but he did not specify which complaints were unfounded. The Smiths' complaint in the current action lists by name 17 agencies to which Elliot is alleged to have made unfounded complaints, and it notes these were not the only agencies with which Elliot allegedly communicated.  It seems that one of the complaints Judge Buchwald found improper was made to the San Mateo County Sheriff's Department, because he relied specifically on this complaint in explaining his ruling.  That agency is not listed in the Smiths' complaint, however.  The Smiths have not met their burden of demonstrating with certainty that the issues involved in the two proceedings are identical. (*Kemp Bros. Construction, Inc. v. Titan Electric Corp., supra,* 146 Cal.App.4th at pp. 1483-1484.)

---

[11] In their reply brief, the Smiths argue vaguely that "[r]espondents were not denied a fair adversary proceeding in which to fully present their defense."  They contend that Elliot and Carole Delmar, "both principals of the corporate Respondent, were represented by counsel and testified at the proceeding."  We cannot tell whether this means that Elliot and Carole Delmar are the sole owners of Café Real Estate.  In any event, Anna Smith's counsel conceded at the restraining order hearing that Carole Delmar's conduct was not at issue and that there was no evidence she was involved at all.  Finally, Ms. Delmar's appearance as a witness says nothing about whether she had the power to control any aspect of the defense of the restraining order action.  (See *Lynch v. Glass* (1975) 44 Cal.App.3d 943, 949.)

Third, we cannot say Elliot had a full and fair opportunity to litigate the privilege issue in the restraining order case. While the Restraining Order states Elliot's conduct in making reports to government agencies was not privileged under Civil Code section 47, subdivision (b), that issue was not raised in either Anna Smith's request for a restraining order or in Elliot's response to her request, the only prehearing papers in the record before us.[12]  (See *Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1690 [issue is conclusively determined by first judgment only if it is actually raised by proper pleadings and treated as issue in case].)  We therefore cannot determine whether Elliot had notice that this issue would be decided at the hearing.  Adding to the uncertainty is the fact that at the hearing on the Restraining Order, Anna Smith's counsel contended the case was "not about complaints to public agencies."  Counsel also conceded that Elliot's reports to government agencies were a valid exercise of his First Amendment rights.  Counsel had "no quarrel with any of that[.]"  "In the absence of a record establishing that the claim was asserted and that the legal and factual issues therein were fully litigated, we conclude that the question of [privilege] was not foreclosed by the adverse judgment in the earlier summary proceeding."  (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 258.)

V.     *The Smiths Have Failed to Show a Probability of Prevailing on the Merits of Their Claims.*

The Smiths have failed to meet their burden of establishing the elements of collateral estoppel.  Because the preclusive effect of the Restraining Order was the *only* basis for their claim that they had a probability of prevailing on the merits, their failure to meet this burden necessarily means they cannot satisfy the second prong of the section 425.16 analysis.  (See § 425.16, subd. (b)(1) [cause of action arising from petition or free speech rights subject to motion to strike "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the

---

[12] At the beginning of the hearing on the Restraining Order, Judge Buchwald stated that Elliot's counsel had made a "privilege argument" in his papers, but no such papers are in the record before us.  Moreover, the privilege argument to which the judge referred seems to have been raised in connection with Elliot's allegedly inappropriate conduct during a deposition.

16

claim"].)  That is, they have not demonstrated that their complaint is both legally sufficient and supported by a prima facie showing of facts sufficient to sustain a judgment in their favor if their evidence were credited.  (*Paulus, supra,* 139 Cal.App.4th at p. 672.)  Thus, the trial court did not err in granting defendants' special motion to strike.

DISPOSITION

The order granting defendants' special motion to strike is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                         _____

                         Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.

A139488